ELECTRONIC CITATION: 2002 FED App. 0008P (6th Cir.)
File Name: 02b0008p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: JAMES R. HOLLINGSHEAD, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| DEERE CREDIT SERVICES AND | ) |
| PLANTER'S BANK, | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | )   No. 02-8045 |
| | ) |
| TENNESSEE DEPT. OF AGRICULTURE, | ) |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Jackson.
No. 01-13759.

Argued: November 6, 2002

Decided and Filed: December 20, 2002

Before: AUG, HOWARD, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Phyllis A. Childs, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. Vincent K. Seiler, SPRAGINS, BARNETT, COBB & BUTLER, Jackson, Tennessee, William D. Wilson, Jr., Memphis, Tennessee, for Appellees. **ON BRIEF:** Phyllis A. Childs, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. Vincent K. Seiler, SPRAGINS, BARNETT, COBB & BUTLER, Jackson, Tennessee, William D. Wilson, Jr., Memphis, Tennessee, for Appellees.

―――――――――――――

**OPINION**

―――――――――――――

STEVEN W. RHODES, Chief Bankruptcy Appellate Panel Judge. The Tennessee Department of Agriculture ("TDOA") appeals the decision of the bankruptcy court finding that TDOA's statutory lien on the Debtor's 2000 cotton crop does not have priority over the liens of two creditors that are also secured by the Debtor's 2000 cotton crop.

## I.   ISSUES ON APPEAL

Whether the bankruptcy court erred in finding that TDOA does not have an automatic, superseding statutory lien pursuant to subsections (b) and (c) of Tennessee Code Annotated § 43-6-426 on the proceeds received from the Debtor's 2000 cotton crop.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted). If there are no disputed facts, "the determination of priorities among liens is a question of law subject to de novo review." *Kenpak Converters, Inc. v. Patterson* (*In re Patterson*), 139 B.R. 229, 231 (B.A.P. 9th Cir. 1992).

### III.   FACTS

James Hollingshead filed a Chapter 11 bankruptcy petition on August 21, 2001.  On October 20, 2001, Planter's Bank filed a proof of claim in the amount of $16,872.  Planter's Bank has a secured claim resulting from a March 28, 2000 loan.  Planter's Bank perfected its security interest by filing a UCC-1 financing statement on April 7, 2000.

Deere Credit Services filed a proof of claim in the amount of $52,767.74 on November 8, 2001.  Deere Credit Services' proof of claim is based on a secured claim resulting from a promissory note dated February 2, 2000.  Deere Credit Services perfected its security interest by filing a UCC-1 financing statement on February 9, 2000.

TDOA filed a proof of claim in the amount of $8,219.50 on November 23, 2001.  TDOA claims a superceding statutory lien based on Tenn. Code Ann. §§  43-6-426(b), (c).  TDOA's claim is for fees incurred under the Tennessee Boll Weevil Eradication Program.  Pursuant to the statute, an assessment is made once a year on farm land which produces cotton.  The assessment on Hollingshead's land for the year 2000 was made on October 16, 2000 in the amount of $16,177.84.  Hollingshead paid a total of $10,375.84 of the assessment.  Pursuant to the rules and regulations promulgated pursuant to the statute, TDOA then applied a late payment penalty of $5.00 per acre, leaving the unpaid balance and penalties at $8,219.50.   See TENN. COMP. R. & REGS. 0080-6-22-.12(4) (providing for late payment penalty of $5.00 per acre).

Hollingshead received checks totaling $8,949.59 as proceeds for the sale of his 2000 cotton crop.  On April, 11, 2002, Deere Credit Services filed a motion for an Order Directing Debtor to Disburse Checks That Are Payment for Cotton Equities.   TDOA objected to the motion on May 6, 2002.  The court conducted a hearing on May 15, 2002 and directed the parties to file briefs.  On June 19, 2002, the Court issued an opinion and order holding that TDOA has a lien pursuant to Tenn. Code Ann. § 43-6-426(d).  However, the bankruptcy court held that Deere Credit Services and Planter's Bank's security interests are superior to TDOA's lien.  TDOA filed this timely appeal.

### IV.   DISCUSSION

"[M]atters concerning the validity, nature, and priority of liens are governed by the law of the state in which the property is situated[.]"  *LSA Leasing Corp. v. Phipps Constr. Co.*, 972 F.2d 347 (6th Cir. 1992) (unpublished table decision) (citing *Lewis v. Mfrs. Nat'l*

*Bank of Detroit*, 364 U.S. 603, 81 S. Ct. 347 (1961)).  Therefore, the Panel looks to the laws of Tennessee to determine which party to this appeal has priority.

TDOA asserts that the bankruptcy court erred in finding that TDOA did not have superior rights to the proceeds from Hollingshead's cotton crop under the Tennessee Boll Weevil Eradication Program.  The statute provides:

> (a) A cotton grower who fails to pay, when due and upon reasonable notice, any assessment levied under this part, shall be subject to a per acre penalty as established in the commissioner's rules, in addition to the assessment.
>
> (b) A cotton grower who fails to pay all assessments, including penalties, within thirty (30) days of notice of penalty, shall destroy any cotton plants growing on such cotton grower's acreage which is subject to the assessment.  Any such cotton plants which are not destroyed shall be deemed to be a public nuisance, and such public nuisance may be abated in the same manner as any public nuisance.  The commissioner, with the approval of the attorney general and reporter and upon the relation of the attorney general and reporter, may apply to the circuit court of the judicial district in which the public nuisance is located to have such nuisance condemned and destroyed, with all costs of destruction to be taxed against the grower.  This injunctive relief shall be available to the commissioner, notwithstanding the existence of any other legal remedy, and the commissioner shall not be required to file a bond.
>
> (c) Whenever a cotton grower fails to pay all assessments, penalties, and costs associated with the treatment and/or destruction of a cotton crop, the commissioner may recover the amount due from the buyer of the grower's crop, equal to but not exceeding the amount the buyer paid for the crop.  Notice of the commissioner's claim shall be given in writing to the grower and the buyer.  The buyer shall pay the commissioner's claim before payment for the crop is made to the grower.  Beginning on the date written notice is received by the buyer, the commissioner's claim shall apply to any cotton crop grown by the grower, including future crops, until the commissioner's claim is paid in full.  The buyer shall be liable for making such payment to the commissioner; however, any buyer of cotton shall take free of the commissioner's claim if such buyer has not received written notice of the claim by the date the grower receives payment for the crop.
>
> (d) If the grower's cotton crop fails or is not sufficient to pay the commissioner's claim as provided for in subsection (c), the commissioner shall have a lien of equal dignity with other liens for moneys owed to the state against all real and personal property owned or subsequently acquired by the grower in accordance with the provisions of § 67-1-1403.  The commissioner shall cause a notice of a lien for payment of such claim to be recorded in the office of the appropriate county register of deeds as provided for in § 67-1-1403.

> (e) The commissioner may promulgate rules as may be necessary to file a lien to accomplish the purposes of this part.

Tenn. Code. Ann. § 43-6-426.

TDOA asserts that § 43-6-426(b) and (c) provide it with a superseding statutory lien. TDOA asserts that the important policy behind the statute of eradicating the boll weevil and protecting the cotton crops is a great concern to the State of Tennessee. It further asserts that the ability of TDOA to destroy the cotton crops if the assessment is not paid (§ 43-6-426(b)) and the ability to collect the assessment directly from the buyer (§ 43-6-426(c)) support its interpretation that subsections (b) and (c) provide it with a superseding lien. TDOA points out that it has the ability to destroy the crops or collect payment for the assessment from the buyer without considering whether other parties have an interest in the cotton crop. According to TDOA, subsection (d) only comes into play to provide TDOA with an additional lien on *all real and personal property* of the grower if funds received from the sale of the crop are insufficient to pay the assessment. It provides a mechanism for TDOA to obtain a lien on more than just the grower's cotton crops.

Deere Credit Services and Planter's Bank assert that TDOA had two options with regard to Debtor's 2000 cotton crop. It could either destroy the Debtor's cotton crop under subsection (b) when the assessment was not paid on time or it could provide notice to the buyer under subsection (c) that the buyer was required to make payment for the cotton crop to TDOA rather than the Debtor. Since TDOA did not pursue either of these options, it lost its priority position over the proceeds from the sale of the cotton crop.

The Panel concludes that the arguments of Deere Credit Services and Planter's Bank are better reasoned.

> The law of the Circuit is well-established; in its efforts to interpret a statute, a court may look beyond the text only in four limited instances: (1) where the text is ambiguous; (2) where a literal reading is inconsistent with other statutory provisions; (3) where a plain-language reading is inconsistent with congressional intent; (4) where the plain statutory meaning leads to absurd results.

*Cline v. General Dynamics Land Sys., Inc.*, 296 F.3d 466, 473 (6th Cir. 2002) (Cole, J., concurring). None of the reasons to look beyond the text is present in this case.

The plain language of subsections (b) and (c) of § 43-6-426 provide two alternatives for TDOA to obtain payment of the assessment ahead of prior secured parties. TDOA failed to protect itself by taking action under either subsection. TDOA did not destroy the crop pursuant to subsection (b). Further, TDOA did not fully pursue its remedies under subsection (c), which allows it to receive payment directly from the buyer. Subsection (c) gives TDOA a claim against a buyer, provided that TDOA gave the buyer proper notice of TDOA's claim before payment was made to the grower. However, a claim is not the equivalent of a lien. Moreover, the record in the present case is not clear on the issue of notice. If TDOA did give proper notice to the buyer then TDOA might have a state law cause of action against the buyer.

The only subsection which provides for a lien is subsection (d). Since the proceeds of the cotton crop were not sufficient to pay TDOA's claim after paying the secured claims, TODA has a statutory lien in all real and personal property of Hollingshead. Section 43-6-426(d) provides, "the commissioner shall have a lien of equal dignity with other liens for moneys owed to the state against all real and personal property owned or subsequently acquired by the grower in accordance with the provisions of § 67-1-1403."

Section 67-1-1403(e) provides, "Nothing in this section shall be interpreted to give the state priority over any deed of trust or any security interest perfected under the Uniform Commercial Code which is filed prior to the filing of the notice of state tax lien[.]" Tenn. Code. Ann. § 67-1-1403(e). Therefore, TDOA's lien is junior to the prior perfected security interests of Deere Credit Services and Planter's Bank, as the bankruptcy court held.

## V.   CONCLUSION

Accordingly, the bankruptcy court's order allowing distribution of the checks on hand is **AFFIRMED**.